UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNA L.,

                    Plaintiff,              5:23-CV-0655
                                                                                    (GTS/TWD)
v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

OLINSKY LAW GROUP                        HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street - Suite 210
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION      SHANNON FISHEL, ESQ.
OFFICE OF GENERAL COUNSEL
  Counsel for Defendant
6401 Security Boulevard - 1520 Annex
Baltimore, Maryland 21235


HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

       The above matter comes to this Court following a Report-Recommendation by United States Magistrate Thérèse Wiley Dancks, filed on May 31, 2024, recommending that (1) the Commissioner's motion for judgment on the pleadings be denied, (2) Plaintiff's motion for judgment on the pleadings be granted, (3) the Commissioner's decision denying disability benefits be reversed, and (4) the case be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  (Dkt. No. 20.)  Objections to the Report-

Recommendation have not been filed and the time in which to do so has expired. (*See generally* Docket Sheet.) Because exceptions have not been filed, the Court reviews the Report-Recommendation for clear error. Fed. R. Civ. P. 72(b)(3), Advisory Committee Notes.

After carefully reviewing all of the papers herein, including Magistrate Judge Dancks' Report-Recommendation, the Court finds that there is no clear error in the conclusion regarding the severity of Plaintiff's mental impairments, but that there is clear error in the second finding regarding the failure to consider the effects of Plaintiff's mental impairments when assessing the RFC.

As to this second finding, the Report-Recommendation concludes that the ALJ committed harmful error by failing to indicate how he considered Plaintiff's mental functioning when assessing her RFC. (Dkt. No. 20, at 14-15.) Although the Court acknowledges that the ALJ does not discuss anything regarding Plaintiff's mental impairments in the section of his decision regarding the RFC finding, such fact alone does not suggest error, given that the ALJ's decision must be read as a whole and findings made in other sections can inform a reviewer of the basis of the ALJ's RFC finding. *See Anastasia F. v. O'Malley*, 23-CV-0637, 2024 WL 1717094, at *4 (N.D.N.Y. Apr. 22, 2024) (Katz, M.J.) (noting that "the ALJ's decision should be read as a whole, and it would indeed create needless formality to require the ALJ to repeat his analysis to satisfy [an analytic requirement]" related to a later step of the sequential analysis); *see also Desiree S. v. Comm'r of Soc. Sec.*, 22-CV-0985, 2023 WL 7688690, at *6 (N.D.N.Y. Sept. 8, 2023) (Peebles, M.J.) ("In assessing the ALJ's findings, his decision must be read as a whole."). Further, it has long been accepted in this circuit that the failure of an ALJ to clearly or explicitly discuss certain pieces of evidence or explain why he or she found certain evidence

insufficient to lead to a conclusion of disability is not harmful error so long as the court is able to glean the rationale of the ALJ's decision.  *See Enid N. C. O. v. Kijakazi*, 21-CV-0191, 2022 WL 4115633, at *2 (N.D.N.Y. Sept. 9, 2022) (Sannes, C.J.) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 [2d Cir. 1983]).  With these principles in mind, the Court turns to the ALJ's findings related to Plaintiff's mental impairments and the Report-Recommendation.

In making his Step Two severity finding, the ALJ relied on the following: (1) Plaintiff's treatment was through her general practitioner; (2) treatment consisted of prescription medication venlafaxine/Effexor, which Plaintiff reported "seems to work"; (3) primary care records showed mental status examination findings that were consistently within normal limits or "good" related to alertness, orientation, eye contact, judgment, insight, speech, affect, and thoughts; (4) she was not observed to be in acute distress or as having mental abnormalities during exacerbations of other health issues that could be considered periods of heightened stress; and (5) an examination by consultative examiner Dr. Hartman showed only depressed mood, anxious affect, slouched posture, and mild deficits with concentration, attention, and memory.  (Administrative Transcript ["T"] at 18-19.)  The ALJ noted that the medical record documented few, if any, mental status abnormalities since the consultative examiner's assessment (which the ALJ also noted was the earliest dated evidence in the record), that there was no evidence that Plaintiff followed up on a referral to a psychiatrist for an emotional support animal, and that she reported that her medication "was effective at managing her symptoms." (T. at 19.)  The ALJ found that, based on this evidence, and by affording "extreme deference to her subjective reports" to the consultative examiner, Plaintiff had mild restrictions in the four areas of functioning relevant to the assessment of the "Part B" criteria.  (T. at 18-19.)  When addressing each of these areas

separately, the ALJ reiterated that the finding of a mild limitation was the result of affording "extreme deference" to either Plaintiff's subjective complaints (given the lack of objective support for any such limitations), or, in the case of the area of understanding, remembering, and applying information, of considering the consultative examiner's observation of mild problems with concentration and memory despite finding such observation to be "anomalous" compared with the rest of the record evidence. (T. at 19-20.) The ALJ additionally indicated that he found the opinion of state agency psychological consultant Dr. Momot-Baker to be persuasive as to a finding of non-severity of Plaintiff's mental impairment, but that he found consultative examiner Dr. Hartman's opinion "less persuasive" in light of the evidence. (T. at 20.) Lastly, the ALJ stated near the end of his Step Two analysis that, "[t]he following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (T. at 20.)

In determining that the ALJ failed to consider the effects of Plaintiff's non-severe mental impairments on her RFC, the Report-Recommendation does not appear to take into account the fact that the ALJ discussed in detail the evidence relevant to Plaintiff's mental health nor the fact that the ALJ specifically explained how persuasive he found the relevant opinion evidence of record to be. Instead, the Report-Recommendation focuses almost solely on the fact that the ALJ does not mention the mental impairments or evidence related to those impairments in the section related to the RFC finding, or specifically "explain the impact of these limitations, if any, on Plaintiff's ability to perform light work." (Dkt. No. 20, at 14.) It rejects the ALJ's statement that the RFC finding includes his findings at Step Two related to the mental impairments as a mere "boilerplate recitation." (Dkt. No. 20, at 14.) This is clear error, as it fails to read the ALJ's

4

decision as a whole and fails to acknowledge that the ALJ did not merely state in a conclusory manner that he considered the mental impairments when assessing the RFC, but rather included a discussion of the relevant evidence as part of the Step Two finding that at the very least permits the Court to glean his rationale underlying the absence of any mental limitations in the RFC finding.

Importantly, although the Report-Recommendation states that the perceived error in failing to conduct a more explicit assessment of the impact on the RFC is harmful "because there is at least a reasonable likelihood that a different result could be reached if the ALJ properly considered Plaintiff's non-severe mental impairments when evaluating the RFC," it does not identify any evidence that the ALJ ignored, misinterpreted, or weighed in an inappropriate manner that would suggest that a more fulsome consideration could have resulted in the inclusion of any mental limitations in the RFC finding. Indeed, after reviewing the record evidence, the Court finds none.[1] The Report-Recommendation acknowledges, "the presence of mild limitations . . . does not require that mental restrictions be incorporated into the RFC," and the ALJ here found that Plaintiff had mild limitations only by virtue of extreme deference to her subjective reports despite the objective evidence to the contrary. In the absence of any evidence suggesting a greater restriction than the ALJ discussed or credited, it cannot be said that the ALJ's failure to include a more explicit consideration regarding the RFC finding was harmful,

---

[1] The Court notes that, although Plaintiff alleged disability in part due to depression in her application, she did not provide testimony asserting the limiting effect of any mental impairment at either of the two hearings that were conducted in this case, despite providing significant testimony about how her physical impairments prevented her from working. Indeed, the only apparent subjective reports detailing how Plaintiff's mental impairments allegedly affect her on a functional level appear in the consultative examiner's report dated April 20, 2018. (T. at 685-89.)

even if it could be found to be erroneous.[2]  (Dkt. No. 20, at 13 [quoting *Lisa G. v. Comm'r of Soc. Sec.*, 22-CV-0552, 2023 WL 4175295, at *5 (N.D.N.Y. June 26, 2023) (Stewart, M.J.)]); *see Mark E. v. Kijakazi*, 20-CV-0425, 2021 WL 4168590, at *7 (N.D.N.Y. Sept. 14, 2021) (Scullin, J.) (finding that error was harmless where "it would not alter the outcome of his claim").

The Report-Recommendation appears to rely on *Laura Anne H. v. Saul*, 20-CV-0397, 2021 WL 4440345, at *9-10 (N.D.N.Y. Sept. 28, 2021) (Dancks, M.J.) as a primary analogous case supporting the recommended outcome, but *Laura Anne H.* is subtly inapposite.  That case found that the ALJ failed to properly consider the effects of the plaintiff's non-severe mental impairments when assessing the RFC, noting that "[t]he ALJ failed to conduct any analysis regarding Plaintiff's mental impairments or the impact that those impairments may have had on her ability to work."  *Laura Anne H.*, 2021 WL 4440345, at *10.  It is not clear what the ALJ's Step Two analysis looked like in *Laura Anne H.*, but, as was already discussed, the analysis in the current case was thorough and included an assessment of the same issues that the ALJ would have to consider when assessing the RFC finding, including the persuasiveness of the opinion evidence and whether subjective reports of symptoms were or were not consistent with the objective medical and other evidence.

To conclude that remand is required in every case where the ALJ fails to provide some specific discussion in the section analyzing the RFC finding of why he or she chose not to incorporate limitations based on non-severe mental impairments despite the fact that the ALJ has

---

[2]       This is true despite the fact that Dr. Hartman's opinion suggests possible functional restrictions because the ALJ clearly and explicitly explained why he found Dr. Hartman's opinion to be less persuasive in the relevant respects.  The Court notably adopts the Report-Recommendation's rejection of Plaintiff's assertion of any error in the ALJ's assessment of severity of the mental impairments at Step Two, including his findings regarding the persuasiveness of Dr. Hartman's opinion.

otherwise explained why the evidence does not support any such mental limitations (and where a review of the evidence itself does not reveal evidence that the ALJ ignored or misinterpreted) would be to elevate form over function. So long as the Court can glean the ALJ's rationale from his or her decision and such gleaned rationale is supported by substantial evidence, the ALJ's finding should not be disturbed merely because it could have been rendered in a clearer or more explicit manner. This is indeed not a case in which the ALJ's decision is so lacking in any explanation regarding the relevant question that it can be considered to be a legal error.

For the above reasons, the Court adopts the Report-Recommendation's first finding related to the ALJ's severity determination, but rejects the second finding related to the ALJ's consideration of Plaintiff's non-severe mental impairments when assessing the RFC.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 20) is **ADOPTED in part** as to the first finding related to the ALJ's Step Two finding, but **REJECTED in part** as to the second finding related to the ALJ's consideration of Plaintiff's non-severe mental impairments when assessing the RFC; and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 9, 2024
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge